Donald Potter (SBN 192735)
dp@donpotterlaw.com
LAW OFFICE OF DONALD POTTER
690 East Green Street, Suite 102
Pasadena, California 91101
Telephone: 626.744.1555
Facsimile: 626.389.0592

Attorneys for Plaintiff

PROSKAUER ROSE LLP
ANTHONY J. ONCIDI (SBN 118135)
aoncidi@proskauer.com
ANTHONY J. DIBENEDETTO (SBN 282360)
adibenedetto@proskauer.com
TRAVIS T. HALL (SBN 301755)
thall@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 312-3100

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HENDERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO CUBS BASEBALL CLUB, LLC; and DOES 1 to 20, inclusive,<br><br>Defendants. | CASE NO.: 5:17-cv-02366-SVW-KKx<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION RE: DEFENDANT'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS**<br><br>Date: June 18, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 10A<br>Judge: Hon. Stephen V. Wilson<br><br>Pre-trial Conference: June 11, 2018<br>Complaint Filed: October 18, 2017<br>Trial: June 19, 2018 |

-1-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. DEFENDANT'S INTRODUCTION

### A. This Motion Is To Be Heard By The Hon. Stephen V. Wilson, And Not The Magistrate Judge, Per The Court's Orders Due To The Proximity To The June 19, 2018 Trial.

This motion concerns a discovery dispute between Plaintiff Dennis Henderson ("Henderson" or "Plaintiff") and Defendant Chicago Cubs Baseball Club, LLC ("Chicago Cubs" or "Defendant"). Specifically, Defendant seeks Plaintiff's text messages with current and former employees of Defendant in a format that allows the reader to determine the sender and recipient, and the date and time the message was sent. Defendant also seeks information concerning compensation Plaintiff has received since he separated employment with Defendant.

Plaintiff alleges that he was discriminated against by his employer based on his age and disability. Plaintiff selectively produced three purported text messages, but has withheld many others. Further, the text messages he produced prevent anyone from determining the date and time they were sent, the sender of the text messages, or the recipients. During Plaintiff's deposition, Plaintiff handed his phone to Defendant's counsel, Defendant's counsel identified a string of additional text messages between Plaintiff and his supervisors, Defendant's counsel requested their production and Plaintiff stated "I'll be happy to send them…" and "you can have any of them." Since the deposition, Plaintiff has not stated any basis for withholding text messages and has indicated that the text messages would be produced, but has not produced the text messages that he indisputably has in his possession.

-2-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**

At his deposition, Plaintiff testified that he has received state disability benefits from the Employment Development Department, has applied for Social Security benefits, and has received significant payments from a short-term disability policy that he received as a result of his employment with Defendant. Plaintiff has refused to produce this information based on the mistaken and misguided assertion that this income constitutes a "collateral source" and, therefore, it does not need to be produced.

As this dispute will be heard within three (3) weeks of the June 19, 2018 trial date, the motion is to be heard by the Hon. Stephen V. Wilson (hereinafter referred to as "the Court") pursuant to the "New Case Order" (Dkt. No. 7), No. 4 and the "Civil Trial Preparation Order" (Dkt. No. 13) D.1 ("Any discovery disputes that are not resolved three (3) weeks prior to the scheduled trial date should be brought promptly and directly to the attention of this Court."

### PLAINTIFF'S INTRODUCTION

The Defendant's motion regarding the benefits Plaintiff received (e.g., state disability, ettc.) must be denied as they are all collateral sources under California law and inadmissible to reduce damages. Moreover, Defendant hasn't articulated a valid reason other than offset to support discovery of these documents in this particular case.

In regard to text messages Plaintiff supposedly sent to Cubs employees Bassett and Porter, Defendant never explains why it cannot get these texts from Bassett or Porter. It also doesn't explain why Defendant didn't produce these texts in response to Plaintiff's demands for such documents. With that said, Plaintiff has produced texts and is searching his phone for additional texts. Plaintiff will provide the supplemental production (if any), during the week of May 28, 2018.

### II.   THE PARTIES' MEET AND CONFER EFFORTS AND SATISFACTION OF LOCAL RULE 37-1

On December 15, 2017, Defendant served on Plaintiff a Request for Production of Documents while the action was pending in this Court. (*Id.*, Exh. A.) Defendant requested, in part, "[a]ny and all DOCUMENTS RELATING to any communications between PLAINTIFF and present or former employees or agents of CHICAGO CUBS during the period from October 1, 2004 to the present." (*Id.*, Exh. A, Demand No. 16). Defendant also requested, in part, "PLAINTIFF's pay stubs, payroll records, earnings records, and DOCUMENTS reflecting any and all sources and/or amounts of income, earnings, or other remuneration, whether from CHICAGO CUBS or from another source, obtained during the period from October 1, 2004 to the present." and "[a]ny and all DOCUMENTS RELATING to efforts by PLAINTIFF to obtain or engage in an occupation, business, job, or source of income, compensation, or remuneration during the period from September 22, 2016 to the present." (*Id.* ¶ 4, Exh. A, Demand Nos. 21-22). On March 22, 2018, Plaintiff produced documents in response to Defendant's Request for Production. (*Id.* ¶ 5, Exh. B.)

As detailed below, at Plaintiff's deposition on March 23, 2018, Defendant's counsel requested, and Plaintiff agreed to produce, Plaintiff's text messages. On April 24, 2018, Defendant's counsel wrote to Plaintiff's counsel, requesting "a discussion pursuant to L.R. 37-1 regarding Plaintiff's failure to produce certain documents, including Plaintiff's text messages and documents concerning Plaintiff's earnings following his employment with the Cubs." (*Id.* ¶ 5, Exh. D.) The parties engaged in a meet and confer call shortly thereafter, then on May 4, 2018, Plaintiff's counsel and Defendant's counsel met-and-conferred about production of the above-mentioned documents during a face-to-face meeting. (*Id.* ¶ 7.) During this conference of counsel, Plaintiff's counsel did not state any objection to producing Plaintiff's text messages. (*Id.* ¶ 8.) During this same conference, Plaintiff's counsel stated that information concerning Plaintiff's income following his employment with the Cubs constituted collateral source income and did not

need to be disclosed. (*Id.* ¶ 9.) Defendant's counsel responded by providing Plaintiff's counsel with case law establishing that employers may use such income to establish an offset. (*Id.* ¶ 10.)

## DISCOVERY IN DISPUTE

### A. Category Number 1: Plaintiff's Text Messages

**DEFENDANT'S POSITION WHY PRODUCTION IS DEFICIENT:**

Plaintiff produced documents marked Henderson 000112-000114, which purport to be text messages sent by Plaintiff. (*Id.* ¶ 5, Exh. C.) However, the header on each document indicates that they were emailed from Plaintiff to himself on March 6, 2018. These documents do not list the sender, the recipient, the date, or the time the message was sent. By modifying these documents and refusing to produce them in their original form, Plaintiff has violated the Federal Rules of Civil Procedure. (*See* Fed. R. Civ. Proc., Rule 34(i) and (ii)) (documents must be produced as they are kept in the ordinary course and a party must produce documents in the form in which it is originally maintained or in a reasonably usable form). Accordingly, Plaintiff should be compelled to produce these text messages in their original form in compliance with the Federal Rules of Civil Procedure.

Further, Plaintiff should be compelled to produce his additional text messages with Cubs employees. These texts are indisputably in Plaintiff's possession and he has agreed to produce them. Defendant's counsel and Plaintiff had the following exchange during Plaintiff's deposition:[1]

> Plaintiff: I'll look it up on the phone.
> Defendant's Counsel: Okay. Did you find it?
> Plaintiff: Yep.
> Defendant's Counsel: And who's it show you sent it to?
> Plaintiff: Jared Porter and Andrew Bassett.

---

[1] True and correct copies of relevant excerpts of the transcript from Plaintiff's deposition are attached as Exhibit E to the declaration of Anthony J. DiBenedetto filed in support hereof.

-5-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**

> Defendant's Counsel: Okay. May I see it?
>
> Plaintiff: Sure.
>
> Defendant's Counsel: Sure, thanks. So it looks like -- Counsel, I'll just say it looks like there might be some more e-mails – I'm sorry – text messages here. So I would request on the record that you -- that he provide these to you and you take a look at them. Again, I'm not accusing anybody of --
>
> Plaintiff: I'll be happy to send them …
>
> Plaintiff: I was showing you the one, but you can have -- you can have any of them. (Plaintiff's deposition 128:05-129:02).

Plaintiff has not asserted any objection to date concerning these text messages. Plaintiff's communications with Defendant's employees are relevant to show whether Plaintiff informed Defendant of his alleged disability or explicitly denied that his alleged medical issues affected his ability to work, whether he sought an accommodation or explicitly stated that he did not want an accommodation, as well as Plaintiff's thoughts on why his employment contract with Defendant was not renewed. Accordingly, Defendant respectfully requests that the Court order Plaintiff to produce text messages in his possession between Plaintiff and Defendant's employees.

**PLAINTIFF'S POSITION:**

As an initial matter, Defendant hasn't explained why Defendant does not have (or cannot obtain) texts Plaintiff supposedly sent to Cubs manages Jared Porter and Andrew Bassett as those individuals would also have copies.  With that said, Plaintiff is searching for any additional texts and will provide the supplemental production during the week of May 28, 2018.

**B.     Category Number 2: Information Concerning Plaintiff's Income**

**DEFENDANT'S POSITION WHY PRODUCTION IS DEFICIENT:**

Plaintiff testified that he has received state disability benefits from the Employment Development Department, has applied for Social Security benefits,

and has received payments from a short-term disability policy that he received as a result of his employment with Defendant.

Defendant's Counsel: Okay. Did you apply, though, for state disability benefits at any point?

Plaintiff: Yes.

Defendant's Counsel: From the EDD?

Plaintiff: Yes.

Defendant's Counsel: Okay. How about from Social Security?

Plaintiff: We did apply for that, but they're 20 months behind.

Defendant's Counsel: Okay. So that's pending?

Plaintiff: Yes. (Plaintiff's deposition 306:22-307:6).

Defendant's Counsel: So you got checks from approximately November 2016 through December of 2017?

Plaintiff: Yep.

Defendant's Counsel: How much were the checks on a monthly basis?

Plaintiff: It was 1100 a week. (*Id*. 307:20-25).

Defendant's Counsel: Any other sources of income or benefits or payments other than what you've told me so far?

Plaintiff: I get a disability from Lincoln Financial now.

Defendant's Counsel: Is that a personal policy you had or is this something you had through the Cubs?

Plaintiff: No, this was through the Cubs.

Defendant's Counsel: Okay. And how much is that you get?

Plaintiff: 3700.

Defendant's Counsel: Per month?

Plaintiff: Correct, but that runs out, too. (*Id*. 310:15-311:4).

Despite admitting to receiving these payments, Plaintiff asserts that he does not need to produce information about these payments because they constitute a "collateral source." However, employers are permitted to deduct income received from these sources from any lost wages awarded to a former employee. *Mayer v. Multistate Legal Studies, Inc.*, 52 Cal. App. 4th 1428, 1436 (1997) (setting off "the amount of the disability benefits" from Plaintiff's damages); *Rotolo Chevrolet v. Superior Court*, 105 Cal. App. 4th 242, 247 (2003) (plaintiff "is not entitled to characterize the disability pension payments he receives from his employer as a collateral source…."); *Gunchick v. Fed. Ins. Co.*, No. CV 14-1162 RSWL PJWX, 2015 WL 1781467, at *1 (C.D. Cal. Apr. 20, 2015) ("benefits derived from a plaintiff's independent insurance policy are treated differently than benefits provided by or contributed to by an employer.") (citing *McLean v. Runyan*, 222 F.3d 1150, 1156 (9th Cir.2000)); *Flowers v. Komatsu Min. Sys., Inc.*, 165 F.3d 554, 558 (7th Cir. 1999) ("It is within the district court's discretion to set off—or not to set off—social security disability payments."). Notably, Plaintiff admitted that his most significant source of income, the Lincoln Financial disability plan, was "through the Cubs." (*Id.* 310:15-311:4). Accordingly, all of the sources of payment that Plaintiff testified to receiving can be offset from any damages awarded to Plaintiff.

Further, even if all of these sources were collateral sources, the Court would still have the discretion to deduct them from an award. *Naton v. Bank of California*, 649 F.2d 691, 700 (9th Cir. 1981) ("We need not decide whether the collateral source rule applies in this case, because we hold that even if the district court was authorized to treat the unemployment compensation as a collateral benefit, it retained the discretion under the ADEA to deduct the compensation from the back pay award.").

In addition, the information sought by Defendant may relate to more than just offsetting damages. These documents will likely detail whether Plaintiff was

-8-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**

able to work during a given period and his state of mind regarding the reasons why he did not receive a new employment contract from Defendant. *Gunchick*, 2015 WL 1781467, at *1 ("while the collateral source rule may preclude use of certain evidence for purposes of calculating damages, it is admissible for other purposes, including establishing Plaintiff's motives and or credibility.").

Accordingly, Plaintiff should be compelled to produce documents containing information regarding the sources of income he has received following his employment with Defendant.

**PLAINTIFF'S POSITION:**

To the extent payments from any collateral source have been made to Plaintiff following his termination—including EDD benefits, disability benefits, private insurance and workers' compensation payments—all evidence and argument about such payments should be excluded. Such exclusion stems from application of the collateral source rule, which has been stated as follows: "Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer." *Anheuser-Busch v. Starley* (1946) 28 Cal.2d 347, 349; *See also Helfend v. So. Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6. "The collateral source rule is well established in [the State of California], and in fact California has long been described as a firm proponent of the collateral source rule." *Hrnjak v. Graymar, Inc.* (1971) 4 Cal. 3d 725, 729.

In *Helfend*, the California Supreme Court specifically held the collateral source rule to be alive and well in this State and found specific instances where it applied: "We therefore affirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source - such as insurance, pension, continued wages, or **disability payments**.

*Helfend v. So. Cal. Rapid Transit Dist., supra,* 2 Cal.3d at 13 (emphasis added). Many other cases have acknowledged that wage replacing benefits, including disability and/or unemployment benefits, are a form of collateral source and are inadmissible. *See e.g. Arambula v. Wells* (1999) 72 Cal.App.4th 1006.

The rationale behind the above cited cases and numerous others is the reasoning that tortfeasors should not recover a windfall from the "thrift and foresight of persons who have actually or constructively secured insurance, pension, or disability benefits to provide for themselves and their families." *Id.* at 1009. Moreover, benefits of this character are intended to alleviate the financial distress of unemployment and not to diminish the amount of plaintiff's damages. *Billeter v. Posell* (1949) 94 Cal.App.2d 858. As such, this rule "operates both as a substantive rule of damages and as a rule of evidence. Because a collateral payment may not be used to reduce recoverable damages and as a rule of evidence." *Mize-Kurzman v. Marin Community College* (2012) 2012 WL 75015, *24.

Under California, it is settled that unemployment insurance benefits and social security benefits fall under the collateral source rule, they cannot serve as an offset to damages, and any evidence of said benefits must be excluded at trial. *Monroe v. Oakland School District* (1981) 114 Cal. App. 3d 804, 810 (upholding the trial court's exclusion of employment benefits in a wrongful termination lawsuit, and holding "unemployment insurance benefits are not deductible as compensation received from other employment in mitigation of damages."); *McKinney v. California Portland Cement Co.* (2002) 96 Cal.App.4th 1214, 1226, (social security benefits are "classic collateral source.") And the California Supreme Court held that disability payments through private policies are also a collateral source. *Helfend v. So. Cal. Rapid Transit Dist., supra,* 2 Cal.3d at 13 (emphasis added) ("We therefore affirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent

-10-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**

collateral source - such as insurance, pension, continued wages, or **disability payments**.") (emphasis added).

The cases cited by Defendant that such evidence is admissible as an offset are unsupportive or distinguishable. For example, in *Rotolo Chevrolet v. Superior Court*, 105 Cal. App. 4th 242, the Court dealt with *two types* of *pension* benefits (retirement and disability) and it specifically held that the collateral source rule doctrine covers payments such as pensions paid to a plaintiff who, as a result of his injuries, can no longer work. Like insurance benefits, such payments are considered to have been secured by the plaintiff's efforts as part of his employment contract, and the tortfeasor is entitled to no credit for them. *Rotolo*, supra, 105 Cal App. 4th at 245 ("However, the [collateral source] doctrine also covers payments such as pensions paid to a plaintiff who, as a result of his injuries, can no longer work. Like insurance benefits, such payments are considered to have been secured by the plaintiff's efforts as part of his employment contract, and the tortfeasor is entitled to no credit for them.")

Likewise, its reliance on *Flowers v. Komatsu Min Sys., Inc.* 165 F.3d 554 558 (7th Cir.) and *Naton v. Bank of California*, 649 F.2d 691, 70 (9th Cir. 1981) to support the argument that collateral sources can be deducted from awards is misplaced as both those cases were based violations of the ADEA---ones which aren't alleged in this case.

Moreover, Defendant's claim that these collateral sources are discoverable because they will "detail whether Plaintiff was able to work" is a position that has been rejected by courts. *Davis v. Los Angeles Unified School Dist. Personnel Com.*, 152 Cal. App. 4th 1122, 1140 (2007) ("We have previously stated that the mere receipt of disability benefits, as well as representations made by an employee in obtaining them, do not necessarily mean the employee is unable to perform his or her job. (internal citation omitted). The United States Supreme Court later

reached the same conclusion.  See *Cleveland v. Policy Management Systems Corp.* (1999) 526 U.S. 795, 801–805 [143 L. Ed. 2d 966, 119 S.Ct. 1597, 1601–1603]." Finally, Defendant fails to explain why if the Cubs provided the disability benefits to Plaintiff, as opposed to Plaintiff electing a plan, why it wouldn't have access to the records of the benefits it supposedly provided.

### III. CONCLUSION

#### A. Defendant's Conclusion

For the aforementioned-reasons, Plaintiff should be ordered to produce:

(1) His text messages with Defendant's employees in a manner that shows the sender, recipient and time and date that the messages were sent; and

(2) all documents concerning income Plaintiff has received subsequent to his employment with Defendant.

#### B. Plaintiff's Conclusion

For the aforementioned reasons, Plaintiff respectfully requests the Court to deny this Motion in its entirety.

DATE:  May 28, 2018            LAW OFFICE OF DONALD POTTER


                               By: _____/s/_____
                                   Donald Potter
                                   Attorney for Plaintiff


DATE:  May 28, 2018            PROSKAUER ROSE LLP


                               By: _____/s/_____
                                   Anthony J. DiBenedetto
                                   Proskauer Rose LLP
                                   Attorney for Defendant

-12-

**Joint Stipulation Re Defendant's Motion to Compel Further Production of Documents**
**Case No. 5:17-cv-02366-SVW-KKx**