PROSKAUER ROSE LLP
ANTHONY J. ONCIDI (State Bar No. 118135)
aoncidi@proskauer.com
ANTHONY J. DIBENEDETTO (State Bar No. 282360)
adibenedetto@proskauer.com
TRAVIS T. HALL (State Bar No. 301755)
thall@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:   (310) 557-2900
Facsimile:   (310) 557-2193

Attorneys for Defendant,
CHICAGO CUBS BASEBALL CLUB, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HENDERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO CUBS BASEBALL CLUB, LLC; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:17-cv-02366-SVW-KK<br><br>(San Bernardino Superior Court Case No. CIVDS 1720438)<br><br>Hon. Stephen V. Wilson<br><br>**DECLARATION OF ANTHONY J. DIBENEDETTO IN SUPPORT OF DEFENDANT CHICAGO CUBS BASEBALL CLUB, LLC'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS**<br><br>Date:   June 18, 2018<br>Time:   1:30 p.m.<br>Place:  Courtroom 10A<br>Judge: Hon. Stephen V. Wilson<br><br>Motion Filing Cut-Off: None<br>Discovery Cut-off: None<br>Pre-trial Conference: June 11, 2018 |

**DECLARATION OF ANTHONY J. DIBENEDETTO**

## DECLARATION OF ANTHONY J. DIBENEDETTO

I, Anthony J. DiBenedetto, state and declare as follows:

1.      I am an attorney at the law firm Proskauer Rose LLP, attorneys of record for Defendant Chicago Cubs Baseball Club, LLC ("Defendant"). I am admitted to practice law in the State of California and in the United States District Court for the Central District of California.

2.      Except as may be expressly noted below, I have personal and first-hand knowledge of the facts set forth herein, and I could and would testify competently thereto if called and sworn as a witness.

3.      I submit this Declaration in support of Defendant's Motion to Compel Further Production of Documents.

4.      On December 15, 2017, Defendant served on Plaintiff a Request for Production of Documents while the action was pending in this Court. A true and correct copy of Defendant's Request for Production of Document is attached hereto as **Exhibit A**.

5.      On March 22, 2018, Plaintiff produced documents in response to Defendant's Request for Production. A true and correct copy of Plaintiff's email attaching documents produced in response to Defendant's Request for Production of Document is attached hereto as **Exhibit B**.  A true and correct copy of documents marked Henderson 000112-000114 which were produced by Plaintiff on March 22, 2018 is attached hereto as **Exhibit C.**

6.      On April 24, 2018, I wrote to Plaintiff's counsel, requesting "a discussion pursuant to L.R. 37-1 regarding Plaintiff's failure to produce certain documents, including Plaintiff's text messages and documents concerning Plaintiff's earnings following his employment with the Cubs." A true and correct copy of my April 24, 2018 email is attached hereto as **Exhibit D.**

7.      I engaged in a meet and confer call with Plaintiff's counsel shortly thereafter. Then on May 4, 2018, Plaintiff's counsel and I met-and-conferred to discuss

production of the above-mentioned documents during a face-to-face meeting.

8.    During this conference of counsel, Plaintiff's counsel did not state any objection to producing Plaintiff's text messages.

9.    During this same conference, Plaintiff's counsel stated that information concerning Plaintiff's income following his employment with the Cubs constituted collateral source income and did not need to be disclosed.

10.    I responded by providing Plaintiff's counsel with case law establishing that employers may use such income to establish an offset.

11.    Attached hereto as **Exhibit E** are true and correct copies of relevant excerpts of the transcript from Plaintiff's deposition.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this Declaration was executed on May 28, 2018, in Los Angeles, California.



Anthony J. DiBenedetto

**DECLARATION OF ANTHONY J. DIBENEDETTO**

# EXHIBIT A

PROSKAUER ROSE LLP
ANTHONY J. ONCIDI (State Bar No. 118135)
aoncidi@proskauer.com
ANTHONY J. DIBENEDETTO (State Bar No. 282360)
adibenedetto@proskauer.com
TRAVIS T. HALL (State Bar No. 301755)
thall@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:  (310) 557-2900
Facsimile:   (310) 557-2193

Attorneys for Defendant,
CHICAGO CUBS BASEBALL CLUB, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HENDERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO CUBS BASEBALL CLUB, LLC; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:17-cv-02366-SVW-KKx<br><br>**DEFENDANT CHICAGO CUBS BASEBALL CLUB, LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF DENNIS HENDERSON (SET ONE)**<br><br>Judge: Hon. Stephen V. Wilson |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Chicago Cubs Baseball Club, LLC ("Defendant" or "Chicago Cubs") hereby requests that Plaintiff Dennis Henderson ("Plaintiff") produce and permit Defendant to inspect and copy the documents described below.  The documents shall be produced at the offices of Proskauer Rose LLP, 2049 Century Park East, 32nd Floor, Los Angeles, California 90067, within thirty (30) days of the date of service of this request.  These Requests for Production of Documents ("Requests") are continuing in nature, and Defendant requests that all responses to these Requests be supplemented in accordance with Fed. R. Civ. P. 26(e) up to the time of final judgment in this case.

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.      "ORIGINAL" includes, in addition to its customary and usual meaning, the definition found in California Evidence Code Section 255: "The writing itself or any counterpart intended to have the same effect by a person executing or issuing it. ... If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'"

2.      "DOCUMENTS" means and includes the term "writing" as defined in California Evidence Code Section 250 as well as any printed, typewritten, or handwritten matter of whatever character, including, but not limited to: e-mail (in electronic or printed form), data stored in a computer or on a computer disk, tape, or other component, letters, memoranda, telegrams, periodicals, pamphlets, reports, records, studies, papers, ledgers, written statements of witnesses or persons having knowledge of the relevant facts, catalogues, handbooks, brochures, diaries, and journals, including carbon or photographic copies of any such material. Responsive DOCUMENTS may be located on your personal computers, work computers, personal e-mail accounts, work e-mail accounts, Internet-based e-mail accounts, or inboxes through social networking sites or Internet forums.

3.      "SOCIAL MEDIA" means any website or digital application (including mobile applications) through which an individual can create a user profile and share user-generated content or participate in Internet-based or mobile social networking, including, without limitation, Facebook,

MySpace, Linkedin, Twitter, Tumblr, Instagram, Pinterest, Google+ ("Google Plus"), YouTube, and Vine.

4.      "BLOG" or "BLOGS" means any website or digital application (including mobile applications) on which an individual can create and articles (or "posts") about his or her own opinions, interests, and experiences, including, but not limited to WordPress, Blogger, Medium, Svbtle, Quora, and Typepad.

5.      "PERSON" means and includes any natural person, partnership, joint venture, cooperative or unincorporated association, public or private corporation, public entity or other entity, or any affiliate, office, director, employee, agent, representative or attorney of any of the foregoing.

6.      "RELATING" means, in addition to its customary and usual meaning, mentioning, discussing, describing, referring, depicting, pertain, containing, reflecting, evidencing, constituting, showing, recording, or being in any way legally, logically, or factually connected with the matter discussed.

7.      "EVIDENCING" means, in addition to its customary and usual meaning, reflecting, describing, displaying, exhibiting, summarizing, establishing, supporting, proving, depicting, fixing, recording, reporting, tending to establish, or tending to prove.

8.      "INCLUDING" is a term that is used when examples are given for the purpose of edifying the meaning of a demand and is never meant to limit the demand's scope.

9.      "Any" should be understood to include and encompass "all," and "or" should be understood to encompass "and," vice versa, as necessary to bring within the scope of a particular demand any document which might otherwise be construed to be outside its scope.

10.      "PLAINTIFF," "YOU," or "YOUR" means and refers to Plaintiff Dennis Henderson.

11.      "DEFENDANT" or "CHICAGO CUBS" means Defendant Chicago Cubs Baseball Club, LLC, including its past and present parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and current and former officers, members, agents, representatives, and employees.

2

12. "COMPLAINT" means the Complaint filed by Plaintiff Dennis Henderson in the California Superior Court for the County of San Bernardino on or about October 18, 2017, bearing the case number CIVDS 1720438.

## INSTRUCTIONS

1. Produce ORIGINALS of the DOCUMENTS demanded herein, arranged and labeled according to the number of the demand to which they respond.

2. Each demand for DOCUMENTS contained herein extends to all DOCUMENTS in the possession, custody or control of PLAINTIFF and anyone acting on PLAINTIFF'S behalf. A DOCUMENT is deemed to be in PLAINTIFF'S possession, custody or control if it is in PLAINTIFF'S physical custody, or it is in the physical custody of any other person and PLAINTIFF (1) owns such DOCUMENT on any terms, (2) has an understanding, express or implied, that plaintiff may use, inspect, examine or copy such DOCUMENT on any terms, or (3) has, as a practical matter, been able to use, inspect, examine or copy such DOCUMENT when PLAINTIFF sought to do so. If any DOCUMENT was ever, but no longer is in PLAINTIFF'S possession, custody, or control, state what disposition was made of such DOCUMENT.

3. If only a part of a demand for the production of document is objectionable, the demand shall be responded to insofar as the demand is not deemed objectionable.

4. If any DOCUMENT is not produced because a privilege or exemption is claimed please identify each such document (by date, title, author, addressees, PERSONS copied, number of pages, and subject matter), the number of the demand that calls for its production, the privilege or exemption claimed, and, in detail sufficient to enable the court to decide if the privilege has been properly invoked, the basis for the privilege or exemption asserted.

5. This demand shall be deemed continuing so as to require further and supplemental production promptly if plaintiff receives, generates, or discovers additional documents called for herein between the time or original production and the time of any evidentiary hearing.

3

**DEMAND FOR PRODUCTION OF DOCUMENTS AND THINGS**

**DEMAND FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS referenced, referred to, or mentioned in the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 2:**

Any and all handbooks, benefit descriptions, policy statements, letters, memoranda, notes, or documents of any nature (INCLUDING, but not limited to rules, regulations, practices, and policies governing personnel matters) received by PLAINTIFF from CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS RELATING to the hiring of PLAINTIFF by CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 4:**

Any and all DOCUMENTS RELATING to PLAINTIFF's employment by CHICAGO CUBS, INCLUDING, but not limited to, employment contracts, offers of employment, separation agreements, and/or any other written DOCUMENTS of or concerning PLAINTIFF's employment with CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS RELATING to PLAINTIFF's job-related functions, actions, or activities during the course and scope of PLAINTIFF's employment with CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 6:**

Any and all DOCUMENTS RELATING to personnel decisions made with respect to PLAINTIFF by CHICAGO CUBS (INCLUDING, but not limited to, all DOCUMENTS reflecting the reasons for, or circumstances surrounding, such personnel decisions).

**DEMAND FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS RELATING to any evaluation of, or comments concerning, PLAINTIFF's job performance with CHICAGO CUBS by any employee or agent of CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 8:**

Any and all DOCUMENTS RELATING to any discipline of PLAINTIFF by CHICAGO CUBS or any employee or agent of CHICAGO CUBS.

4

**DEMAND FOR PRODUCTION NO. 9:**

Any and all DOCUMENTS RELATING to PLAINTIFF's job performance while employed by CHICAGO CUBS prepared by persons other than employees or agents of CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 10:**

Any and all DOCUMENTS RELATING to any internal grievance or COMPLAINT made by PLAINTIFF regarding any issues RELATING to PLAINTIFF's employment with CHICAGO CUBS from October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 11:**

Any and all letters, memoranda, notes, or DOCUMENTS of any nature transmitted by PLAINTIFF to DEFENDANT.

**DEMAND FOR PRODUCTION NO. 12:**

Any and all letters, memoranda, notes, or DOCUMENTS of any nature received by PLAINTIFF from DEFENDANT.

**DEMAND FOR PRODUCTION NO. 13:**

Any and all statements, memoranda, or DOCUMENTS of any nature prepared by or for PLAINTIFF EVIDENCING or RELATING to the events or facts alleged or alluded to in the COMPLAINT (INCLUDING, but not limited to, any letters, notes, diaries, calendars, daily planners, logs, memoranda, personal recordings, or written statements).

**DEMAND FOR PRODUCTION NO. 14:**

Any and all diaries, calendars, logs, and personal recordings prepared by or for PLAINTIFF at any time from October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 15:**

Any and all tape or sound recordings of any telephonic or in-person communications between PLAINTIFF and any present or former employees or agents of CHICAGO CUBS during the period from October 1, 2004 to the present.

5

**DEMAND FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS RELATING to any communications between PLAINTIFF and present or former employees or agents of CHICAGO CUBS during the period from October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 17:**

Any and all statements, memoranda, or DOCUMENTS of any nature EVIDENCING or RELATING to the extent to which PLAINTIFF has been harmed, if at all, in his future earning capacity by the alleged actions of the DEFENDANT.

**DEMAND FOR PRODUCTION NO. 18:**

Any and all statements, memoranda, or DOCUMENTS of any nature EVIDENCING or RELATING to any damages PLAINTIFF contends he suffered as a result of the alleged actions of DEFENDANT.

**DEMAND FOR PRODUCTION NO. 19:**

Any and all DOCUMENTS EVIDENCING or RELATING to any and all medical treatments (INCLUDING, but not limited to, surgeries and/or psychological treatment) RELATING to injuries allegedly sustained by PLAINTIFF during his employment with CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 20:**

Any and all medical records, including, but not limited to, all DOCUMENTS provided to or received from physicians, hospitals, therapists, psychiatrists, psychologists and/or pharmacies since October 1, 2004.

**DEMAND FOR PRODUCTION NO. 21:**

PLAINTIFF's pay stubs, payroll records, earnings records, and DOCUMENTS reflecting any and all sources and/or amounts of income, earnings, or other remuneration, whether from CHICAGO CUBS or from another source, obtained during the period from October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 22:**

Any and all DOCUMENTS RELATING to efforts by PLAINTIFF to obtain or engage in an occupation, business, job, or source of income, compensation, or remuneration during the period

6

1  from September 22, 2016 to the present (INCLUDING, but not limited to, reference letters,

2  communications with persons requested to write reference letters for PLAINTIFF, resumes, draft

3  resumes, communications with prospective employers or business associates, applications for

4  employment or business association, photographs, portfolios, audio or video tapes, and

5  DOCUMENTS received from prospective employers or business associates).

6  **DEMAND FOR PRODUCTION NO. 23:**

7        Any and all DOCUMENTS RELATING to occupations, businesses, jobs, or sources of

8  income, compensation or remuneration engaged in or earned by PLAINTIFF during the period from

9  September 22, 2016 to the present.

10  **DEMAND FOR PRODUCTION NO. 24:**

11        Any and all tax returns, financial statements, letters, memoranda, or DOCUMENTS of any

12  nature EVIDENCING or RELATING to income or benefits received by PLAINTIFF from any

13  employment, self-employment, or business endeavor from the beginning of PLAINTIFF's

14  employment with CHICAGO CUBS on or about October 1, 2004 to the present.

15  **DEMAND FOR PRODUCTION NO. 25:**

16        Any and all statements, memoranda, or DOCUMENTS of any nature EVIDENCING or

17  RELATING to any claim for unemployment benefits made by PLAINTIFF from the beginning of

18  PLAINTIFF's employment with CHICAGO CUBS on or about October 1, 2004 to the present.

19  **DEMAND FOR PRODUCTION NO. 26:**

20        Any and all statements, memoranda, or DOCUMENTS of any nature EVIDENCING or

21  RELATING to any claim for workers' compensation benefits made by PLAINTIFF from the

22  beginning of PLAINTIFF's employment with CHICAGO CUBS on or about October 1, 2004 to the

23  present.

24  **DEMAND FOR PRODUCTION NO. 27:**

25        Any and all statements, memoranda or DOCUMENTS of any nature EVIDENCING or

26  RELATING to any claim, COMPLAINT, or charge by PLAINTIFF against CHICAGO CUBS with

27  any state or federal agency, department, or office.

28

**DEMAND FOR PRODUCTION NO. 28:**

Any and all DOCUMENTS RELATING to any lawsuit or litigation to which PLAINTIFF was a party during the past 10 years.

**DEMAND FOR PRODUCTION NO. 29:**

Any and all pay stubs, benefit booklets, insurance policies, letters, memoranda, or DOCUMENTS of any nature EVIDENCING or RELATING to pay or benefits received by PLAINTIFF from any employment dating from the beginning of PLAINTIFF's employment with CHICAGO CUBS on or about October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 30:**

Any and all statements, memoranda, or DOCUMENTS of any nature EVIDENCING or RELATING to any records of discipline made by CHICAGO CUBS RELATING to PLAINTIFF from the beginning of PLAINTIFF's employment with CHICAGO CUBS on or about October 1, 2004 to the present, INCLUDING but not limited to any records of discipline made by CHICAGO CUBS before PLAINTIFF was terminated on September 22, 2016.

**DEMAND FOR PRODUCTION NO. 31:**

Any and all postings (INCLUDING, but not limited to, comments, notes, "shares," updates, and "tweets") by PLAINTIFF on any SOCIAL MEDIA since October 1, 2004 RELATING to the subject matter of this lawsuit (INCLUDING, but not limited to, the allegations in the COMPLAINT and or any damages or relief sought by PLAINTIFF in this case).

**DEMAND FOR PRODUCTION NO. 32:**

Any and all DOCUMENTS EVIDENCING or RELATING to messages received by PLAINTIFF on any SOCIAL MEDIA used by PLAINTIFF since October 1, 2004 RELATING to the subject matter of this lawsuit (INCLUDING, but not limited to, the allegations in the COMPLAINT and or any damages or relief sought by PLAINTIFF in this case).

**DEMAND FOR PRODUCTION NO. 33:**

Any and all DOCUMENTS RELATING to postings (INCLUDING, but not limited to, comments, notes, "shares," updates, and "tweets") by PLAINTIFF since October 1, 2004 on any SOCIAL MEDIA RELATING to PLAINTIFF's employment with CHICAGO CUBS.

8

**DEMAND FOR PRODUCTION NO. 34:**

Any and all DOCUMENTS RELATING to or EVIDENCING messages received by PLAINTIFF on any SOCIAL MEDIA used by PLAINTIFF since October 1, 2004 RELATING to PLAINTIFF's employment with CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 35:**

Any and all DOCUMENTS RELATING to or EVIDENCING postings (INCLUDING, but not limited to articles, comments, links to other websites, and shared images) by PLAINTIFF on any BLOG used by PLAINTIFF since October 1, 2004 RELATING to PLAINTIFF's employment with CHICAGO CUBS.

**DEMAND FOR PRODUCTION NO. 36:**

Any and all DOCUMENTS RELATING to or EVIDENCING postings (INCLUDING, but not limited to articles, comments, links to other websites, and shared images) by PLAINTIFF on any BLOG used by PLAINTIFF since October 1, 2004 RELATING to the subject matter of this lawsuit (INCLUDING, but not limited to, the allegations in the COMPLAINT and or any damages or relief sought by PLAINTIFF in this case).

**DEMAND FOR PRODUCTION NO. 37:**

Any and all DOCUMENTS RELATING to or EVIDENCING postings (INCLUDING, but not limited to, comments, notes, "shares," updates, and "tweets") by PLAINTIFF on any SOCIAL MEDIA used by PLAINTIFF since October 1, 2004 RELATING to any characteristic for which the Fair Employment and Housing Act prohibits discrimination in employment (e.g. race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person).

**DEMAND FOR PRODUCTION NO. 38:**

Any and all DOCUMENTS RELATING to or EVIDENCING postings (INCLUDING, but not limited to articles, comments, links to other websites, and shared images) by PLAINTIFF on any BLOG used by PLAINTIFF since October 1, 2004 RELATING to any characteristic for which the Fair Employment and Housing Act prohibits discrimination in employment (e.g. race, religious

9

creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person).

**DEMAND FOR PRODUCTION NO. 39:**

Any and all DOCUMENTS EVIDENCING or RELATING to PLAINTIFF's schedule, hours worked, absences, and time off while employed by CHICAGO CUBS from October 1, 2004 to the present.

**DEMAND FOR PRODUCTION NO. 40:**

Any and all DOCUMENTS that PLAINTIFF contends constitute an admission against DEFENDANTS.

**DEMAND FOR PRODUCTION NO. 41:**

Any and all statements, declarations, or affidavits obtained by PLAINTIFF or anyone acting on his behalf RELATING to PLAINTIFF's claims in this case and/or the allegations in the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 42:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "At all relevant times, including within the four years preceding the filing of this lawsuit, Plaintiff HENDERSON was employed by Defendant CHICAGO CUBS and/or DOES 1-20 as a 'Professional Scout,'" as alleged in Paragraph 7 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 43:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "During his employment with Defendant CHICAGO CUBS and/or DOES 1-20, Plaintiff HENDERSON was a misclassified 'exempt' employee that was paid a fixed salary," as alleged in Paragraph 8 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 44:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Plaintiff HENDERSON's job duties required him to routinely work in excess of eight hours per workday, and more than forty (40) hours per workweek," as alleged in Paragraph 8 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 45:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Defendant CHICAGO CUBS and/or DOES 1-20 failed to pay Plaintiff one and one-half (1 1/2) times his regular rate of pay for the hours Plaintiff HENDERSON worked in excess of eight hours per work day, nor those worked in excess of forty hours per work week, as required under California law including, but not limited to, California Labor Code §§ 1194 and 1198," as alleged in Paragraph 8 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 46:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Plaintiff HENDERSON worked for Defendants in excess of five (5) hours per workday without receiving the requisite meal periods, and in excess of ten (10) hours per workday without receiving a requisite second meal period, nor was he compensated for meal periods not provided by Defendants," as alleged in Paragraph 9 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 47:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Plaintiff HENDERSON worked for Defendants in excess of four (4) hours per workday without receiving a ten (10) minute paid rest period per four (4) hours worked or major fraction thereof, nor was he compensated for rest periods not provided by Defendants," as alleged in Paragraph 10 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 48:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Plaintiff HENDERSON's job duties required him to drive his own automobile and use his own personal cellular phone and cellular phone service for business purposes," as alleged in Paragraph 11 of the Complaint.

**DEMAND FOR PRODUCTION NO. 49:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Although Defendant was aware that Plaintiff HENDERSON's duties required him to use his own

11

1 | personal items to perform his job, Defendant CHICAGO CUBS and/or DOES 1-20 failed to

2 | compensate him for doing so," as alleged in Paragraph 11 of the Complaint.

3 | **DEMAND FOR PRODUCTION NO. 50:**

4 |     Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that

5 | "Defendants failed to provide Plaintiff HENDERSON with itemized wage statements in compliance

6 | with California Labor Code § 226 which caused him to be injured in that he was unable to readily

7 | calculate whether he was properly paid," as alleged in Paragraph 12 of the COMPLAINT.

8 | **DEMAND FOR PRODUCTION NO. 51:**

9 |     Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "At the

10 | time of termination, Defendants failed to pay Plaintiff HENDERSON all wages owed pursuant to

11 | California Labor Code §§ 201-203 because he was not paid the proper overtime wages that he

12 | earned for the reasons described above," as alleged in Paragraph 13 of the COMPLAINT.

13 | **DEMAND FOR PRODUCTION NO. 52:**

14 |     Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "In or

15 | about 2014 and during his employment with Defendant CHICAGO CUBS and/or DOES 1-20,

16 | Plaintiff HENDERSON developed physical disabilities including in his right hip and he underwent a

17 | hip replacement surgery, which impacted Plaintiff HENDERSON's ability to participate in major

18 | life activities including his ability to work," as alleged in Paragraph 14 of the COMPLAINT.

19 | **DEMAND FOR PRODUCTION NO. 53:**

20 |     Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "In 2016,

21 | Plaintiff HENDERSON had an employment contract with Defendant CHICAGO CUBS and/or

22 | DOES 1-20 that ran through October 31, 2016," as alleged in Paragraph 15 of the COMPLAINT.

23 | **DEMAND FOR PRODUCTION NO. 54:**

24 |     Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "In or

25 | around the Spring of 2016, and during his employment with Defendant CHICAGO CUBS and/or

26 | DOES 1-20, Plaintiff HENDERSON's ailments in his right hip resurfaced," as alleged in Paragraph

27 | 16 of the COMPLAINT.

28 |

**DEFENDANT CHICAGO CUBS BASEBALL CLUB, LLC'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)**

**DEMAND FOR PRODUCTION NO. 55:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Although PLAINTIFF HENDERSON continued to perform his job duties during the 2016 season, his DISABILITIES impacted Plaintiff HENDERSON's ability to participate in major life activities including his ability to work," as alleged in Paragraph 16 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 56:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "At all relevant times between 2014 and 2016, Defendant CHICAGO CUBS and/or DOES 1-20 were aware of Plaintiff HENDERSON's DISABILITIES and that he needed accommodation from Defendant CHICAGO CUBS and/or DOES 1-20 including, but not limited to, accommodations to his work environment, modification of his job duties and leave," as alleged in Paragraph 17 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 57:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Defendant CHICAGO CUBS and/or DOES 1-20, however, failed to engage in the interactive process with Plaintiff HENDERSON and they failed to offer any accommodation to him," as alleged in Paragraph 17 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 58:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "In 2016, Plaintiff HENDERSON's direct supervisor was Director of Scouting, Jared Porter," as alleged in Paragraph 18 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 59:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that Defendants "were also aware that Plaintiff HENDERSON was sixty-five (65) years old from multiple sources including from Plaintiff HENDERSON's employment contract which listed his date of birth," as alleged in Paragraph 18 of the COMPLAINT.

13

**DEMAND FOR PRODUCTION NO. 60:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "In or about July 2016, Plaintiff HENDERSON informed PORTER that he was experiencing problems with his right hip and that he would need to undergo a further surgical procedure on his right hip," as alleged in Paragraph 19 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 61:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "PORTER requested Plaintiff HENDERSON to delay the surgical procedure until later in the season and Plaintiff HENDERSON agreed to do so," as alleged in Paragraph 19 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 62:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "On or about September 14, 2016, Plaintiff HENDERSON underwent another surgery on his right hip and he was hospitalized for approximately one week," as alleged in Paragraph 20 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 63:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Defendant CHICAGO CUBS and/or DOES 1-20, and PORTER, were made aware of Plaintiff HENDERSON's September 2016 surgery prior to it occurring and they were contemporaneously aware of his subsequent hospitalization," as alleged in Paragraph 20 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 64:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "On or about September 23, 2016, and while Plaintiff HENDERSON was recuperating from surgery, Defendant CHICAGO CUBS and/or DOES 1-20 via PORTER contacted Plaintiff and informed him that his employment was being terminated and that he would not be offered a contract for the upcoming season," as alleged in Paragraph 21 of the COMPLAINT.

**DEMAND FOR PRODUCTION NO. 65:**

Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "Defendant CHICAGO CUBS and/or DOES 1-20 via PORTER also fired another scout who was

14

1  fifty-eight (58) years old and hired three new scouts all who were in their early thirties," as alleged

2  in Paragraph 21 of the COMPLAINT.

3  **DEMAND FOR PRODUCTION NO. 66:**

4  　　　Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that he "is

5  informed and believes that Defendant CHICAGO CUBS and/or DOES 1-20, through its managing

6  agents including PORTER, wrongfully terminated Plaintiff HENDERSON for: (a) his

7  DISABILITIES and need for accommodation; (b) his age; and (c) in retaliation for his need for, and

8  use of, medical leave," as alleged in Paragraph 22 of the COMPLAINT.

9  **DEMAND FOR PRODUCTION NO. 67:**

10  　　　Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "On or

11  about September 6, 2017, and prior to commencing this civil action, and within the time provided by

12  law, Plaintiff filed an administrative charge with the Department of Fair Employment and Housing

13  ("DFEH") against the Defendants setting forth all FEHA-based claims alleged herein," as alleged in

14  Paragraph 23 of the COMPLAINT.

15  **DEMAND FOR PRODUCTION NO. 68:**

16  　　　Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that "On or

17  about September 6, 2017, and prior to commencing this civil action, and within the time provided by

18  law, Plaintiff requested, and received, a 'Right-to-Sue' Letter from the DFEH," as alleged in

19  Paragraph 24 of the COMPLAINT.

20  **DEMAND FOR PRODUCTION NO. 69:**

21  　　　Any and all DOCUMENTS RELATING to or concerning PLAINTIFF's claim that he

22  "served a copy of that letter and the DFEH charge on the defendants in compliance with Government

23  Code § 12965(b)," as alleged in Paragraph 24 of the COMPLAINT.

24

25

26

27

28

15

**DEFENDANT CHICAGO CUBS BASEBALL CLUB, LLC'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)**

1

Dated:  December 15, 2017

2

PROSKAUER ROSE LLP
Anthony J. Oncidi
Anthony J. DiBenedetto
Travis T. Hall

3

4

By: _____
Anthony J. Oncidi

5

6

Attorneys for Defendants
CHICAGO CUBS BASEBALL CLUB, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I declare that: I am employed in the county of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is 2049 Century Park East,

4

32nd Floor, Los Angeles, CA 90067-3206.

5

On December 15, 2017, I served the following document(s), described as:

6

**DEFENDANT CHICAGO CUBS BASEBALL CLUB, LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF DENNIS HENDERSON (SET ONE)**

7

8

☒   by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

9

Donald Potter, Esq.

10

LAW OFFICE OF DONALD POTTER
690 East Green Street, Suite 102

11

Pasadena California 91101
Tel: (626) 744-1555

12

Fax: (626) 389-0592
Email: dp@donpotterlaw.com

13

14

☐   (By E-Mail)  By transmitting a true and correct copy thereof via electronic mail to dp@donpotterlaw.com.

15

☒   (By Mail) I am "readily familiar" with the Firm's practice of collection and processing

16

correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in

17

the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after

18

date of deposit for mailing in affidavit.

19

☐   (By Personal Service) By personally delivering such envelope to the addressee.

20

☐   (By Overnight Delivery) By causing such envelopes to be delivered by the office of the

21

addressee by OVERNIGHT DELIVERY via Federal Express or by other similar overnight delivery service.

22

☒   (Federal) I declare that I am employed in the office of a member of the bar of this

23

court at whose direction the service was made.

24

Executed on December 15, 2017, at Los Angeles, California.

25

26

Robert Linton
Type or Print Name                                    Signature

27

28

**PROOF OF SERVICE**

Exhibit B

**DiBenedetto, Anthony**

| | |
|---|---|
| **From:** | Maria de los Ángeles Reyes Olmedo <maria@donpotterlaw.com> |
| **Sent:** | Thursday, March 22, 2018 4:58 PM |
| **To:** | DiBenedetto, Anthony; Oncidi, Anthony J.; Hall, Travis |
| **Cc:** | Donald Potter |
| **Subject:** | Henderson v. Chicago Cubs-- Document Production |

Dear Defense Counsel,

Attached please find the document production for the Henderson v. Chicago Cubs case.
Due to the size of the document, it was uploaded to Google Drive.

 Henderson Document Production with Bates Number...

Best regards,

María de los **Ángeles Reyes Olmedo**
*Legal Assistant*



690 East Green Street, Suite 102
Pasadena, CA 91101
T: 626.744.1555 | F: 626.389.0592
www.donpotterlaw.com

1

# Exhibit C

From: Denny Henderson dcub23@yahoo.com
Subject: Sept 15, 2016 Text
Date: Mar 6, 2018 at 3:22:20 PM
To: Denny Henderson dcub23@yahoo.com

9 - 15 - 16

Good Morning guys. Surgery went fine with no complications & got a new hip.
Surgeon said he was as good as Lester yesterday & I'm already on it again.
Should be fine for Instructs in a week or anything else you would like me to do.
Thanks Hendu
Sent from my iPhone

From: Denny Henderson dcub23@yahoo.com
Subject: Text back from Andrew Bassett
Date: Mar 6, 2018 at 3:32:37 PM
To: Denny Henderson dcub23@yahoo.com

9-15-16

Glad to hear that Denny. Thanks for the update.

Sent from my iPhone

ONLY RESPONSE I RECEIVED

From: Denny Henderson dcub23@yahoo.com
Subject: Text after Surgery
Date: Mar 6, 2018 at 2:59:45 PM
To: Denny Henderson dcub23@yahoo.com

*9-19-16*

Good Morning Guys. Had a complication occur with a fluid buildup that had to be drained & they had to put me on heavy antibiotics to prevent an infection. Doc says it's going forward now but he doesn't want me on it until sometime next week to eliminate chance of infection. I spoke to the Doc prior to surgery & he was fine with trying to get to AZ next week for Instructs but I'm not sure he's going to allow it now. I am home now if there is anything I can help with from here. Thanks for all your support & understanding. Hendu
Sent from my iPhone

# Exhibit D

## DiBenedetto, Anthony

| | |
|---|---|
| **From:** | DiBenedetto, Anthony |
| **Sent:** | Tuesday, April 24, 2018 3:11 PM |
| **To:** | Donald Potter |
| **Cc:** | Maria de los Ángeles Reyes Olmedo (maria@donpotterlaw.com) |
| **Subject:** | Henderson/Cubs |

Hello Don,

Can you please let me know your availability for a call in the next couple of days regarding: (i) a discussion pursuant to L.R. 37-1 regarding Plaintiff's failure to produce certain documents, including Plaintiff's text messages and documents concerning Plaintiff's earnings following his employment with the Cubs; and (ii) a discussion pursuant to L.R. 7-3 regarding Defendant's contemplated motion for summary judgment.

Also, can you please send us any revisions you have to the proposed protective order that we sent you, so we can finalize that document and submit it to the court.

Thank you.

**Anthony DiBenedetto**

Proskauer
2049 Century Park East Suite 3200
Los Angeles, CA 90067
d 310.284.4508
adibenedetto@proskauer.com

1

# Exhibit E

| | | |
|---|---|---|
| 1 | not questioning -- I'm not doubting it.  I'm just | 12:29:38 |
| 2 | saying when I look at this, I can't tell who you | 12:29:40 |
| 3 | sent it to.  I'm trying to figure out how you know | 12:29:43 |
| 4 | who you sent it to. | 12:29:46 |
| 5 | A    I'll look it up on the phone. | 12:29:47 |
| 6 | Q    Okay.  Did you find it? | 12:29:50 |
| 7 | A    Yep. | 12:30:37 |
| 8 | Q    And who's it show you sent it to? | 12:30:39 |
| 9 | A    Jared Porter and Andrew Bassett. | 12:30:42 |
| 10 | Q    Okay.  May I see it? | 12:30:45 |
| 11 | A    Sure. | 12:30:47 |
| 12 | MR. ONCIDI:  Sure, thanks.  So it looks | 12:30:48 |
| 13 | like -- Counsel, I'll just say it looks like there | 12:31:15 |
| 14 | might be some more e-mails -- I'm sorry -- text | 12:31:18 |
| 15 | messages here.  So I would request on the record | 12:31:20 |
| 16 | that you -- that he provide these to you and you | 12:31:22 |
| 17 | take a look at them.  Again, I'm not accusing | 12:31:24 |
| 18 | anybody of -- | 12:31:28 |
| 19 | THE WITNESS:  I'll be happy to send them -- | 12:31:29 |
| 20 | MR. POTTER:  Don't search his phone right | 12:31:29 |
| 21 | now. | 12:31:31 |
| 22 | MR. ONCIDI:  I'm not searching his phone. | 12:31:32 |
| 23 | I'm just looking at the string that he showed me. | 12:31:34 |
| 24 | It looks like there were some e-mails.  So what we'd | 12:31:36 |
| 25 | like to have -- | 12:31:38 |

DENNIS HENDERSON - 03/23/2018          Page 129

```
 1              THE WITNESS:  I was showing you the one,        12:31:38
 2    but you can have -- you can have any of them.            12:31:39
 3    BY MR. ONCIDI:
 4        Q    I understand, and I'm going to want them,       12:31:41
 5    but my point is that that's what we need.  We need       12:31:42
 6    all of them.  We can't just sort of pick and choose.     12:31:45
 7        A    There's only a couple.  You can have them       12:31:48
 8    all.
 9        Q    That's fine.                                    12:31:50
10        A    I'll send them to you.                          12:31:51
11        Q    No, but in what your client just showed me,     12:31:52
12    it looks like there was another e-mail about --          12:31:58
13    sorry -- text about complications where he describes     12:32:01
14    that and Andrew Bassett responds, "Glad to hear that     12:32:03
15    Denny.  Thanks for the update."  So we'll just want      12:32:06
16    to have everything.  That's all -- that's all I'm        12:32:08
17    saying, but let's go back to this one, the "Good         12:32:10
18    morning, guys."                                          12:32:14
19              You say, "Surgery went fine with no            12:32:15
20    complications" --                                        12:32:17
21              MR. POTTER:  Put -- put that away.             12:32:18
22    BY MR. ONCIDI:
23        Q    -- "& got a new hip.  Surgeon said he was       12:32:20
24    as good as Lester yesterday."                            12:32:27
25              So Lester is a Cubs pitcher, right?            12:32:29
```

| | | | |
|---|---|---|---|
| 1 | Q | As you understand it? | 05:27:10 |
| 2 | | MR. POTTER:  Lacks foundation, calls for a | 05:27:11 |
| 3 | medical opinion, calls for a legal opinion. | | 05:27:13 |
| 4 | BY MR. ONCIDI: | | |
| 5 | Q | You can answer. | 05:27:16 |
| 6 | | MR. POTTER:  If you understand. | 05:27:16 |
| 7 | | THE WITNESS:  I don't -- I don't really -- | 05:27:19 |
| 8 | BY MR. ONCIDI: | | |
| 9 | Q | Say that again. | 05:27:23 |
| 10 | A | I don't -- | 05:27:23 |
| 11 | | MR. POTTER:  If you don't understand, just | 05:27:24 |
| 12 | tell him. | | 05:27:25 |
| 13 | BY MR. ONCIDI: | | |
| 14 | Q | Do you have an understanding -- have you | 05:27:26 |
| 15 | been characterized or classified as being totally | | 05:27:27 |
| 16 | disabled? | | 05:27:29 |
| 17 | A | They gave me a disability placard. | 05:27:30 |
| 18 | Q | For your car? | 05:27:33 |
| 19 | A | Yeah. | 05:27:34 |
| 20 | Q | Okay.  Who gave you that? | 05:27:35 |
| 21 | A | DMV. | 05:27:36 |
| 22 | Q | Okay.  Did you apply, though, for state | 05:27:37 |
| 23 | disability benefits at any point? | | 05:27:40 |
| 24 | A | Yes. | 05:27:43 |
| 25 | Q | From the EDD? | 05:27:43 |

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 05:27:45 |
| 2 | Q | Okay.  How about from Social Security? | 05:27:46 |
| 3 | A | We did apply for that, but they're | 05:27:49 |
| 4 | 20 months behind. | | 05:27:52 |
| 5 | Q | Okay.  So that's pending? | 05:27:53 |
| 6 | A | Yes. | 05:27:55 |
| 7 | Q | But as far as you know, the State of | 05:27:55 |
| 8 | California has classified you as totally disabled? | | 05:27:57 |
| 9 | | MR. POTTER:  Objection; vague and | 05:28:00 |
| 10 | ambiguous, lacks foundation. | | 05:28:01 |
| 11 | | THE WITNESS:  I don't think they've | 05:28:02 |
| 12 | classified me as anything. | | 05:28:03 |
| 13 | BY MR. ONCIDI: | | 05:28:04 |
| 14 | Q | Well, are you getting checks? | 05:28:04 |
| 15 | A | Not anymore. | 05:28:06 |
| 16 | Q | You got checks from when to when? | 05:28:07 |
| 17 | A | It was like 11 months or so.  I haven't | 05:28:08 |
| 18 | gotten any checks in several months.  I think it | | 05:28:20 |
| 19 | ended last December, I think. | | 05:28:23 |
| 20 | Q | So you got checks from approximately | 05:28:28 |
| 21 | November 2016 through December of 2017? | | 05:28:32 |
| 22 | A | Yep. | 05:28:35 |
| 23 | Q | How much were the checks on a monthly | 05:28:35 |
| 24 | basis? | | 05:28:38 |
| 25 | A | It was 1100 a week. | 05:28:41 |

| | | | |
|---|---|---|---|
| 1 | Q | You gave me that address.  Tell me again | 05:30:46 |
| 2 | what it is. | | 05:30:49 |
| 3 | A | 79391 Calle Prospero. | 05:30:50 |
| 4 | Q | And is that paid off? | 05:30:53 |
| 5 | A | No. | 05:30:54 |
| 6 | Q | You got a mortgage? | 05:30:55 |
| 7 | A | Yes. | 05:30:57 |
| 8 | Q | How much is owed on that? | 05:30:58 |
| 9 | A | I think it's about a 100-. | 05:30:59 |
| 10 | Q | Do you know what the value of the property | 05:31:03 |
| 11 | is? | | 05:31:05 |
| 12 | A | Probably 5-. | 05:31:05 |
| 13 | Q | Any other properties you own? | 05:31:08 |
| 14 | A | No.  I wish. | 05:31:10 |
| 15 | Q | Any other sources of income or benefits or | 05:31:14 |
| 16 | payments other than what you've told me so far? | | 05:31:17 |
| 17 | A | I get a disability from Lincoln Financial | 05:31:20 |
| 18 | now. | | 05:31:24 |
| 19 | Q | What's the basis for that?  That's an LTD | 05:31:25 |
| 20 | policy? | | 05:31:28 |
| 21 | A | It's a -- you know what, I don't know | 05:31:28 |
| 22 | what -- I don't know what -- | | 05:31:35 |
| 23 | Q | Is that a personal policy you had or is | 05:31:36 |
| 24 | this something you had through the Cubs? | | 05:31:39 |
| 25 | A | No, this was through the Cubs. | 05:31:41 |

| | | | |
|---|---|---|---|
| 1 | Q | Okay.  And how much is that you get? | 05:31:43 |
| 2 | A | 3700. | 05:31:45 |
| 3 | Q | Per month? | 05:31:49 |
| 4 | A | Correct, but that runs out, too. | 05:31:50 |
| 5 | Q | Is it a short-term disability policy? | 05:31:53 |
| 6 | A | Yeah. | 05:31:55 |
| 7 | Q | Do you know when it runs out? | 05:31:55 |
| 8 | A | I think at the end of the year. | 05:31:57 |
| 9 | Q | End of 2018? | 05:31:59 |
| 10 | A | Right around there. | 05:32:00 |
| 11 | Q | When did you start receiving statements | 05:32:01 |
| 12 | | under that policy? | 05:32:04 |
| 13 | A | The end of last year. | 05:32:05 |
| 14 | Q | End of 2017.  So it pays for a year as far | 05:32:09 |
| 15 | | as you know? | 05:32:14 |
| 16 | A | I believe that's what it is. | 05:32:14 |
| 17 | Q | Did you get any unemployment? | 05:32:16 |
| 18 | A | No. | 05:32:18 |
| 19 | Q | Did you apply for it? | 05:32:18 |
| 20 | A | No. | 05:32:19 |
| 21 | Q | Why not? | 05:32:27 |
| 22 | A | I don't think you can do that. | 05:32:29 |
| 23 | Q | If you're getting disability? | 05:32:30 |
| 24 | A | I don't know if you can -- I've never been | 05:32:31 |
| 25 | | in a situation -- I don't know if you can or you | 05:32:33 |